# EXHIBIT A

ENDORSED
FILED

AUG - 9 2013

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

1   Joseph C. George, State Bar No. 119231
   Joseph C. George, Jr., State Bar No. 280999
2   LAW OFFICES OF
   JOSEPH C. GEORGE, PH.D.
3   A Professional Corporation
   601 University Avenue, Suite 200
4   Sacramento, CA 95825
   Telephone: 916-641-7300
5   Facsimile: 916-641-7303
   Joe@psyclaw.com
6

7   Attorneys for Plaintiff

8         SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          FOR THE COUNTY OF SONOMA    254115

10  MARY DOE,                Case No.: SCV

11        Plaintiff,         COMPLAINT FOR DAMAGES

12  v.                    1. Medical Malpractice I – Negligence
                        2. Medical Malpractice II – Abuse of
13  MARK DOUGLAS KLINE, M.D.,       Transference
   MENDOCINO COAST CLINICS and DOES 1   3. Ostensible Agency/Vicarious Liability
14  through 20, inclusive,          4. Professional Negligence
                        5. Sexual Contact with a Patient (CC §43.93)
15                    6. Intentional Infliction of Emotional Distress
          Defendants,        7. Breach of Fiduciary Duty
16                    8. General Negligence

17

18                 GENERAL ALLEGATIONS

19     1.     Plaintiff is using a fictitious name in this Complaint under rights to privacy granted

20  by the Constitution of the State of California due to the sensitive nature of this case. If, for any

21  reason, Defendants cannot accurately determine the identity of the Plaintiff, their attorneys can

22  contact Plaintiff's attorney at the number on the face sheet of the Complaint, and the name of the

23  Plaintiff will be provided. Plaintiff's name has previously been provided pursuant to Civil Code

24  of Procedure section 364.

25     2.     Plaintiff MARY DOE is a natural person who is a resident of the County of

26  Mendocino.

27     3.     Defendant MARK KLINE, M.D. (hereinafter referred to as "KLINE") is a natural

28  person who is believed to be a resident of the County of Mendocino, State of California.

1      4.    At all relevant times hereinafter mentioned in this Complaint, Defendant KLINE

2  was a physician licensed by the Medical Board of California and held himself out as possessing

3  that degree of care, skill, ability, training and learning common to psychiatrists in the community.

4      5.    Plaintiff is informed and believes and upon such information and belief alleges that

5  Defendant MENDOCINO COAST CLINICS, (hereinafter referred to as "MENDOCINO"), is

6  believed to be a corporation formed under and by virtue of the laws of the State of California,

7  doing business as a mental healthcare facility in Fort Bragg, California, County of Mendocino.

8      6.    At all relevant times mentioned herein, Defendant KLINE was a staff physician at

9  MENDOCINO and practiced psychiatry at MENDOCINO.

10      7.    At all times mentioned in this Complaint, MENDOCINO held itself out as

11  possessing that degree of care, skill, ability, training and learning common to mental healthcare

12  facilities that render care to mentally ill individuals in the community.

13      8.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as

14  DOES or of the factors linking them to causes of action stated herein and therefore sues such

15  defendants by such fictitious names.  Plaintiff will amend her Complaint to allege the true names

16  and capacities of DOES when ascertained.  Plaintiff is informed and believes and thereon alleges

17  that each of the DOE defendants is responsible in some manner for the events and happenings

18  hereinafter referred to, thereby proximately causing injury and damage to the Plaintiff as herein

19  alleged.

20      9.    Plaintiff is informed and believes and thereon alleges that at all times herein

21  mentioned, defendants and each of them, were the agents, servants, employees and/or joint

22  venturers of their co-defendants and were, as such, acting within the scope, course and authority of

23  said agency employment and/or joint venture and that each and every defendant, as aforesaid, has

24  ratified and approved of the acts of his or her agent.

25      10.    Plaintiff began to receive psychiatric treatment at MENDOCINO in 2007 for a

26  bipolar disorder.  Plaintiff was seen by KLINE initially for psychiatric medication management.

27  Defendant KLINE engaged Plaintiff in a psychotherapeutic relationship in addition to managing

28  Plaintiff's medication in or around 2011.  Defendant KLINE rendered professional services to

1   Plaintiff until November 2012.

2       11.   At least some of the wrongful acts mentioned herein occurred in Sonoma,

3   California; therefore, venue is properly placed in Sonoma County.

4   **FIRST CAUSE OF ACTION**

5   **(Medical Malpractice I – Negligence – Defendant KLINE)**

6       12.   Plaintiff incorporates herein by reference all General Allegations as though fully set

7   forth herein and with the same force and effect.

8       13.   During the course of the aforementioned treatment of Plaintiff by Defendant,

9   Defendant agreed to diagnose and treat Plaintiff's emotional problems, and to do all things

10  necessary and proper in connection therewith, thus establishing the relationship of psychiatrist and

11  patient between said Defendant and Plaintiff.

12      14.   During the course of said professional relationship, Defendant engaged Plaintiff in

13  multiple relationships and rendered ineffective and substandard assessment and treatment.  Such

14  negligent and careless treatment included, but was not limited to:

15      a.   Not attempting to treat Plaintiff for her presenting problems; rather, Defendant
16  developed his own agenda for treatment, which constituted the meeting of his own personal needs;

17      b.   Fostering a dependency relationship in a patient who needed help with individualization;

18

19      c.   Engaging Plaintiff in harmful multiple relationships;

20      d.   Clouding and breaking down emotional boundaries in a patient who should have been treated by the establishment of firm boundaries which should have been maintained and controlled throughout treatment;

21

22      e.   Failure to obtain supervision or seek consultation or peer review regarding the treatment of Plaintiff, including supervision of Defendant's own counter-transference issues;

23

24      f.   Failure to adequately attend to his own psychological wellness and self-care, which placed him at risk for impaired professional functioning; and

25      g.   Abandonment.

26      15.   All of the above allegations, which are not meant to be exhaustive, but only

27  examples of Defendant's negligence, constitute actions and omissions below the standard of care

28  in the community and exist wholly and separately from the intentional acts alleged in other parts

1    of this Complaint. If Defendant never acted sexually toward Plaintiff and never performed the

2    intentional misconduct hereinafter alleged, he would have still violated the standard of care in his

3    treatment of Plaintiff as alleged above. Each and every one of the above acts occurred during the

4    years of Plaintiff's treatment with Defendant.

5           16.    As a result of the foregoing conduct of Defendant KLINE, Plaintiff was harmed as

6    more fully set forth below.

7                              **SECOND CAUSE OF ACTION**

8              **(Medical Malpractice II -- Abuse of Transference - Defendant KLINE)**

9

10          17.    Plaintiff herein repeat and re-allege as though fully set forth at length each and

11   every paragraph of this Complaint, except for the paragraphs which are inconsistent with a cause

12   of action for Medical Malpractice -- Abuse of Transference.

13          18.    In 2007, and thereafter, Plaintiff was suffering from mental disorders and/or

14   emotional problems. Because of the nature and type of said mental illnesses and/or problems, and

15   because of Plaintiff's pre-existing condition and background, Plaintiff was highly susceptible to

16   the suggestions of a psychiatrist who, by reason of his training, could take advantage of such

17   illness. Because of such illness, Plaintiff was particularly susceptible to believing that he

18   psychiatrist would actually care for her and look out for her best interests and thus she could easily

19   be sexually pursued and otherwise inappropriately influenced by such psychiatrist, especially

20   considering the nature of therapy and the transference process hereinafter alleged. Such actions

21   upon the part of a psychiatrist would severely aggravate her then-existing condition and cause it to

22   be permanent in nature and further cause her to be deprived of further treatment because of her

23   lack of confidence in that treatment, and could cause her the need to be hospitalized for a long-

24   term hospitalization as opposed to being able to be treated on an outpatient basis.

25          19.    In order to cure a patient suffering from a mental and/or emotional condition such

26   as Plaintiff had in 2007, it is necessary for the psychiatrist, by methods learned by him or her in

27   his or her training, to establish what is known as the "transference phenomenon." The psychiatrist

28   encourages the trust of the patient and as that trust develops, the patient begins to "transfer"

1   feelings and perceptions which she had for significant people (usually mother and father) in her

2   past onto the psychiatrist.  This is an unconscious process that the patient does not realize is

3   occurring.  The psychiatrist essentially "becomes" the parent in the patient's eyes.  However,

4   unlike the real parent, the psychiatrist can remain "neutral" and nonjudgmental.  The patient

5   begins to place enormous trust in the psychiatrist when the patient reveals her darkest secrets to

6   the psychiatrist.  Also, due to the natural imbalance in the relationship, in which a patient is

7   looking towards the psychiatrist for help, the psychiatrist is not only in a position of tremendous

8   power in relationship to the patient, but also the psychiatrist can exert a tremendous amount of

9   influence on the patient.  In the natural progression of therapy, the patient begins to transfer the

10  juvenile fantasies she had for her parents onto the psychiatrist.  The appropriate psychiatrist is then

11  able to learn more and more about the patient's unconscious motivations and barriers and then is

12  able to slowly and carefully help the patient gain insight into a series of "problems" that began in

13  early childhood, which will help the patient overcome years of self-destructive behavior and will

14  place the patient on the road to mental health.  On the other hand, at this point, the patient becomes

15  extraordinarily vulnerable to the inappropriate suggestions and influence of the psychiatrist.  The

16  patient can often be in a regressed state where she is reacting to the psychiatrist the way a young

17  child would react to her parents.  It is usual for the patient to begin expressing sexual feelings

18  towards the psychiatrist and/or to attempt to act out on those feelings.  When this occurs, the

19  appropriate psychiatrist and/or to attempt to act out on those feelings.  When this occurs, the

20  appropriate psychiatrist maintains her/his neutral persona and helps the patient understand the

21  source of the fantasies and feelings which the patient is experiencing.  The inappropriate

22  psychiatrist exploits the situation and begins sexualizing the therapy for her own benefit or at least

23  to the patient's detriment. Because of the transference situation, for a psychiatrist to engage in any

24  type of sexual contact with a patient would be almost identical in its harmful effect to a parent

25  engaging in a sexual relationship with a child.  Once a psychiatrist allows a patient to believe her

26  sexual fantasies can be fulfilled by the psychiatrist, the patient is almost powerless to resist.  If this

27  transference phenomenon is abused by the psychiatrist, not only sexually but in other ways too, it

28  likely will not only worsen the mental illness of the patient but by the reason of the patient's

COMPLAINT FOR DAMAGES
-5-

1   resulting lack of confidence, it will also prevent the patient from being treated successfully in the

2   future without a long-term hospitalization and long-term intense therapy, and even then, the

3   patient cannot be totally put back together.

4       20.   Commencing in 2007 and continuing thereafter, Defendant KLINE so negligently

5   and carelessly treated, guided, counseled, diagnosed, supervised and cared for Plaintiff and abused

6   the transference phenomenon as to cause Plaintiff's condition to worsen. Such negligent and

7   careless treatment and abuse of the transference phenomenon by Defendant KLINE included, but

8   was not limited to, the following acts:

9       a.   Defendant singled Plaintiff out as a psychotherapy patient with whom he would

10          spend one hour in session.

11      b.   When Plaintiff expressed romantic feelings for Defendant KLINE, KLINE told

12          Plaintiff that he felt the need to "validate" what she suspected, that he was in love

13          with Plaintiff.

14      20.   The above allegations are not meant to be exhaustive, but are only examples of

15  Defendant's abuse of the transference phenomenon and inappropriate conduct.

16      21.   Defendant KLINE, by reason of his training and background knew, or should have

17  known, that a woman such as Plaintiff, with the type of emotional condition and/or mental illness

18  from which she was suffering, was particularly susceptible to being influenced by Defendant, to

19  being sexually abused by Defendant, to being exploited by Defendant and to believing that

20  Defendant was the only one who could help her.

21      22.   As a proximate result of the above, Plaintiff suffered damages as otherwise alleged

22  in this Complaint.

23                     **THIRD CAUSE OF ACTION**

24        **(Ostensible Agency/Vicarious Liability - Defendant MENDOCINO)**

25      23.   Plaintiff incorporates herein by reference each and every allegation in the First

26  Cause of Action as if fully set forth herein and with the same force and effect.

27      24.   While engaging in the above-described negligent and careless conduct, Defendant

28  KLINE was in the course and scope of his employment and business relationship with Defendant

COMPLAINT FOR DAMAGES
-6-

1  MENDOCINO, and his conduct was not discretionary. Therefore, Defendant MENDOCINO is

2  responsible for damages caused by said conduct under the principle of respondeat superior.

3      25.    As a result of the foregoing conduct of Defendant MENDOCINO, Plaintiff was

4  harmed as more fully set forth below.

5                          **FOURTH CAUSE OF ACTION**

6                  **(Professional Negligence – Defendant MENDOCINO)**

7      26.    Plaintiff incorporates herein by reference each and every allegation in the Third

8  Cause of Action as if fully set forth herein and with the same force and effect.

9      27.    During the course of the aforementioned business and/or employment relationship

10 that existed between Defendant KLINE and Defendant MENDOCINO, Defendant MENDOCINO

11 agreed to provide training and supervision of Plaintiff's care by Defendant KLINE and to do all

12 things necessary and proper in connection therewith. Defendant MENDOCINO owed Plaintiff a

13 duty not to perform its responsibilities to her negligently and not to negligently hire, control,

14 monitor, supervise, and review the actions of their psychiatrists, including KLINE. During the

15 course of the said professional relationship, Defendant MENDOCINO failed to adequately

16 discharge their aforementioned duties, thus exposing Plaintiff to a foreseeable risk of harm.

17 Specifically, such negligent hiring, training and supervising included a failure to adequately screen

18 and investigate the activities and background of KLINE, a failure to forbid KLINE from engaging

19 Plaintiff in various harmful multiple relationships, including sexual contact.

20     28.    Plaintiff is informed and believes and thereon alleges that Defendant

21 MENDOCINO knew, or in the exercise of reasonable diligence, should have known, that

22 Defendant KLINE was unfit to perform the duties for which he was rendering at Defendant

23 MENDOCINO, and that an undue risk to persons such as Plaintiff would exist because of

24 Defendant KLINE's position.

25     29.    All of the foregoing acts or omissions of Defendant MENDOCINO as herein

26 alleged fell far below the standard of care of licensed mental healthcare facilities in the

27 community, and said wrongful acts/omissions constitute negligence.

28 ///

COMPLAINT FOR DAMAGES
-7-

1   therapy session.   Defendant KLINE told Plaintiff that if she ever discontinued her relationship

2   with him, he would not let her go because he "needed" her.   The day before Defendant KLINE

3   precipitously terminated Plaintiff, he wrote her emails about how he loved her more than ever and

4   he was never going to let Plaintiff go.

5        38.   As a result of the foregoing conduct of Defendant KLINE, Plaintiff was harmed as

6   more fully set forth below.

7   <u>**SEVENTH CAUSE OF ACTION**</u>

8   **(Breach of Fiduciary Duty – All Defendants)**

9        39.   Plaintiff repeats and realleges as though fully set forth herein each and every

10   paragraph of this Complaint, except for the paragraphs inconsistent with a Cause of Action for

11   breach of fiduciary duty.

12        40.   Because of the position of authority and trust occupied by the Defendants, and each

13   of them, and because of the nature of the therapy and the transference phenomenon, the Plaintiff

14   was induced to place special trust and confidence in the Defendants with respect to the course of

15   treatment.

16        41.   Because of the relationship of confidentiality and trust fostered by the Defendants,

17   and each of them, and Plaintiff's reliance on the confidence of them, a fiduciary relationship

18   existed between Plaintiff and Defendants.

19        42.   The Defendants fostered this fiduciary relationship from the beginning of treatment

20   until the end of the Plaintiff's relationship with Defendant KLINE caused Plaintiff harm as more

21   fully set forth below.

22        43.   Defendants' actions in this regard constitute a breach of fiduciary relationship that

23   existed between Plaintiff and Defendants.   As a direct and proximate foreseeable result of the

24   conduct of Defendants, Plaintiff has been injured as set forth below.

25        44.   As a result of the foregoing conduct of Defendants KLINE and MENDOCINO,

26   Plaintiff was harmed as more fully set forth below.

27   ///

28   ///

## EIGHTH CAUSE OF ACTION

### (General Negligence - Defendant KLINE)

45.     Plaintiff herein repeats and re-alleges as though fully set forth at length each and every paragraph of this Complaint, except for the paragraphs which are inconsistent with a cause of action for General Negligence.

46.     A confidential and fiduciary relationship existed between Plaintiff and Defendant KLINE.  Plaintiff had every right to expect that KLINE would treat Plaintiff with the proper psychiatric treatment for her problems, and that the information that she disclosed to Defendant and the relationship itself would be kept confidential.

47.     During the course of Defendant KLINE's relationship with Plaintiff, Defendant had access to medical and psychiatric information concerning Plaintiff's health and state of mind and knew of her susceptibility to emotional distress.  KLINE had training in psychiatry that Plaintiff did not possess.

48.     By virtue of Defendant's professional education, training, and his experience as a psychiatrist, KLINE knew or should have known that people such as Plaintiff, suffering from the types of problems which she presented, were particularly susceptible to being influenced by KLINE and being manipulated by KLINE, and that KLINE's failure to exercise due care in the performance of his acts and promises would cause Plaintiff severe emotional distress.

49.     Insofar as any of KLINE's conduct as otherwise stated in the First and Second Causes of Action of this Complaint was outside of the course and scope of his employment, he was acting in a non-professional capacity; therefore, he was negligent in his actions, and his negligence proximately caused Plaintiff's damage as otherwise stated in the Complaint.

50.     Defendant caused Plaintiff bodily injury by engaging in various non-sexual, non-intentional, negligent acts from 2010 to the end of treatment.

### DAMAGES

51.     As a direct, legal and proximate result of each and all of the Causes of Action herein above alleged, Plaintiff has been damaged as herein below set forth.

52.     Plaintiff has suffered psychological and emotional injury and harm, including not

1  only the immediate distress caused by Defendants and their conduct, but also long-term
2  psychological injuries which were to a large extent only latent at the time of the wrongful conduct,
3  and which have developed and occurred, and will in the future continue to develop and occur in
4  Plaintiff, all to Plaintiff's general damages in a sum to be proven. Plaintiff has further suffered an
5  exacerbation of any emotional difficulties which were pre-existing the harmful treatment she
6  received from Defendants.

7       53.    Plaintiff has suffered physical, mental and emotional health problems as a result of
8  which she has had to employ, and will in the future continue to have to employ, medical and
9  mental health professionals for diagnosis and treatment and has incurred and will in the future
10  continue to incur expenses therefore, in a sum as yet unascertained.  Plaintiff will ask leave of
11  Court to amend this Complaint to state the exact amount of expenses when they are ascertained.

12       54.    Plaintiff has suffered and will in the future continue to suffer a loss of earnings and
13  of earning capacity, in a sum as yet unascertained.  Plaintiff will ask leave of court to amend this
14  Complaint to state the exact amount of such losses when the same are ascertained.

15      WHEREFORE, Plaintiff prays for judgment as follows:

16      1.    For damages for past and future medical, psychotherapy, and related expenses
17  according to proof at the time of trial;

18      2.    For general damages for physical and mental pain and suffering and emotional
19  distress in a sum to be proven at the time of trial;

20      3.    For damages for past and future lost wages and loss of earning capacity according
21  to proof at the time of trial;

22      4.    For prejudgment interest pursuant to statute;

23      5.    For attorneys' fees for the Fifth Cause of Action

24  ///
25  ///
26  ///
27  ///
28  ///

6.    For costs of suit herein; and

7.    For such other and further relief as the Court deems proper.

Dated:  August 9, 2013                LAW OFFICES OF JOSEPH C. GEORGE, PH.D.



By:    _____

JOSEPH C. GEORGE